DOMINICK RIVARA, Plaintiff, *v.* JAMES STEWART & COMPANY and JAMES STEWART & COMPANY, INC., Defendants.

Supreme Court, Queens County, July, 1922.

Sales — conditional sale of vessel — Personal Property Law of state applicable — state rights as to interstate commerce — absence of federal legislation — practice — Rules of Civil Practice, rule 112.

In the absence of federal legislation upon the subject the states, under their powers of local government, are free to legislate so as to affect in a limited degree interstate commerce.

There being no act of congress applicable to conditional sales of vessels, a contract for the conditional sale of a steam tug is within the scope of sections 60, 65 and 66 of the Personal Property Law.

The definition of " goods " in section 156 of the Personal Property Law includes all chattels personal other than things in action and money, and governs in the interpretation of all sections of said statute unless the context or subject-matter otherwise requires.

A steam tug is an article of " goods and chattels " within the sense of the terms of the Personal Property Law.

Under a contract for the sale of a steam tug, title to remain in the vendor until full payment of the purchase price, the vendee agreed to keep the tug in first class repair, free from any and all libels, and with fire and compensation insurance and " to indemnify and save harmless " the vendor " from any and all claims arising out of the operation and control " of the tug. In case of default in any of the payments or violation of any of the terms and conditions of the contract the vendor might retake possession, " and in that event any and all payments previously made, shall be deemed to be, and shall be applied solely as rental," the vendee waiving, in case of such retaking, " any and all claims that he has or had, in and to the said tug." The tug sank and the vendor paid the expense of raising it. The vendee did not repay this amount, and thereafter made no payment whatsoever. However, certain payments made by vendee to that time had been applied upon the running account made up of the purchase price and certain payments made at his request for insurance, repairs, expense of raising, etc. In possessory proceedings had in the United States District Court the vendors were awarded possession of the tug, " subject to any rights or accountability under or by reason of the provisions of " the laws of New York. In an action to recover the amount the vendee had paid up to

the time the tug sank it was agreed that there was no sale thereof, as required by sections 60, 65 and 66 of the Personal Property Law. The defendant vendors interposed two counterclaims, first for the amount of the payments made, as the agreed rental value of the tug, and also for the aggregate amount expended at the vendee's request for insurance, repairs and raising expenses, and the second counterclaim was for the aggregate amount of these insurance and other charges. *Held*, that while defendants' motion for the dismissal of the complaint will be denied it did not follow that under rule 112 of the Rules of Civil Practice there should be judgment in plaintiff's favor and dismissing the counterclaim.

Plaintiff's covenant to pay insurance, keep up repairs and indemnify and save harmless the vendor from all claims arising out of the operation and control of the tug while plaintiff had it in his possession, was separable from the contract of conditional sale, and defendants were entitled to recover, or set off such of the amounts, included in the counterclaims, as may be shown were paid at plaintiff's request, as his agent.

MOTION for judgment on the pleadings.

*Macklyn, Brown, Purdy & Van Wyck (William F. Purdy,* of counsel), for plaintiff.

*Kirlin, Woolsey, Campbell, Kickox & Keating (Harrington Putnam, John M. Woolsey, L. DeGrove Potter* and *A. H. Ely, Jr.,* of counsel), for defendants.

FAWCETT, J. This is a motion by defendants for judgment on the pleadings. The case arises out of the sale of a steam tug by the defendants to plaintiff under a contract, whereby it was provided that title was not to pass until the full payment of the purchase price of $32,500, which was to be by a down payment of $5,000, and thereafter $1,000 monthly. The vendee agreed to keep the tug in first class repair, free from any and all libels, and with fire and compensation insurance, and agreed " to indemnify and save harmless " the vendor " from any and all claims arising out of the operation and control " of the tug. In case of default in any of the payments, or violation of any of the terms and conditions of the agreement, the vendor might retake possession, " and in that event, any and all payments previously made, shall be deemed to be, and shall be applied solely as rental," the vendee waiving, in case of such retaking, " any and all claims that he has or had, in and to the said tug." In or about October, 1920, the tug sank, and defendants paid the expense of raising it, amounting to $1,125. Plaintiff did not repay this amount, and thereafter made no payments whatsoever. He had to that time made payments aggregating $23,518.87, which defendants had applied upon a running account made up of the purchase price, and certain payments, made at plaintiff's request, for insurance, repairs, expense of raising, etc., and which showed a total of charges of $47,597.72,

and a balance, after all credits, of $24,078.85. Possessory proceedings were had in the United States District Court, resulting in an award to the defendants of possession of the tug, " subject to any rights or accountability  *  *  *  under or by reason of the provisions of " the laws of New York. The Personal Property Law, which governs conditional sale of " goods and chattels " (§ 60), provides that where " articles " (§ 65) are conditionally sold, the vendor, upon retaking possession, shall retain possession for thirty days, within which time the vendee may repair his default, and be restored to possession, and after such thirty days the vendor may have the article sold at public auction (§ 65) upon prescribed notice (§ 66). " Unless such articles are so sold  *  *  * the vendee or his successor in interest may recover of the vendor the amount paid on such articles by such vendee or his successor in interest under the contract for the conditional sale  *  *  *." § 65. The action is brought by the vendee to recover the amount, $23,518.87, which he had paid, with interest. It is agreed that there was no sale as required by the provisions above mentioned. Defendants have interposed two counterclaims, the first, for the amount of the payments made, as the agreed rental value of the tug, and also for the amount expended at plaintiff's request, in meeting the insurance, repairs and raising expenses, all aggregating, with interest, $37,676.88. The second counterclaim is for the amount of these insurance and other charges, aggregating, with interest, $15,804.15. The defendants contend that the provisions mentioned of the Personal Property Law do not apply to the conditional sale of a tug enrolled and licensed under Federal statutes, and that such provisions, if held applicable, are unconstitutional, as an invasion of the congressional power over interstate commerce, and the exclusive federal jurisdiction over matters of admiralty or maritime jurisdiction. It is said that the tug is capable of engaging in the interstate coastal trade, and that its normal use about New York harbor is a use in interstate commerce. However that may be, the states are free under their powers of local government to legislate so as to affect interstate commerce, in a limited degree where there is no controlling enactment by congress on the subject. *Lanston Monotype Mach. Co.* v. *Curtis,* 224 Fed. Rep. 403; *Hall* v. *DeCuir,* 95 U. S. 485; *Field* v. *Barber Asphalt Co.,* 194 id. 618, 623; *Hennington* v. *Georgia,* 163 id. 299. There does not seem to be any congressional enactment applicable to conditional sales of vessels. There is cited section 4192 of the United States Revised Statutes, which provides that " No bill of sale, mortgage, hypothecation or conveyance of any vessel  *  *  * shall be valid against any person, *other than the grantor or mortgagor,*

* * * unless * * * recorded in the office of the collector of the customs." This is a mere registry act and does not apply to, or govern the rights of the vendor and vendee between themselves, but is for the protection of third parties, and, in the analogies of the cases which have construed it, does not extend to a conditional sale whereby the vendor retains title until full payment. *Mott* v. *Ruckman*, 3 Blatchf. 71; *Matter of Empire Shipbuilding Co.*, 221 Fed. Rep. 223. And there is nothing maritime in the sale of a vessel, or in its conditional sale. "For a contract to fall within the admiralty jurisdiction, it must concern transportation by sea, relate to navigation, or maritime employment, or be one of navigation and commerce within navigable waters. * * * The rule is well settled that contracts for building or for selling a ship are not maritime contracts, and within the jurisdiction of admiralty." *Grant Smith-Porter Ship Co.* v. *Rhode*, Sup. Ct. Repr. advance opinions Feb. 1, 1922, at page 157; *Thames Towboat Co.* v. *The Francis McDonald*, 254 U. S. 242; *The Ada*, 250 id. 194, 196. The contract of conditional sale in this case, therefore, is within the scope of the cited sections of the Personal Property Law, if a steam tug is an "article" of "goods and chattels" within the sense of the terms in the statute. "Goods" include all chattels personal, other than things in action, and money (§ 156) and this definition governs in the interpretation of all sections of the Personal Property Law, "unless the context or subject-matter otherwise requires." It is suggested that the subject-matter of the conditional sale sections is not "all chattels personal," but such chattels personal as are commonly the subject of conditional sale on the installment plan, such as household furniture. That the purpose of earlier forms of the sections was the protection of purchasers of this character is stated in such cases as *Fairbanks* v. *Nichols*, 135 App. Div. 298; *Nyboe* v. *Doll & Sons, Inc.*, 167 id. 225, and *Alexander* v. *Kellner*, 131 id. 809, but in *Crowe* v. *Liquid Carbonic Co.*, 208 N. Y. 396, 403, the Court of Appeals saw a wider purpose. "The legislative purpose was in the direction of promoting the public good, in mitigating the possible harshness of such a contract by preserving some right to a vendee, and if originally, as part of the former Lien Law, perhaps, having more especial reference to * * * contracts for the sale of household furniture and certain other articles of a household nature, the statute has been so changed by amendment as to read in its present unqualified form. However designed, in the general purpose, to afford some equitable protection against the improvidence and misfortune of the poor, or necessitous, it is for the legislature, not for the court, to restrict the general operation of the act." It follows that defendant's

motion for the dismissal of the complaint should be denied. But it does not follow that (under rule 112) there should be judgment in plaintiff's favor, and dismissing the counterclaims. I think the defendants are entitled to recover, or set off, such of the amounts, included in the counterclaims as it may prove were paid by it, at plaintiff's request as his agent. What the statute seems to contemplate is that " the amount *paid on such articles*    *    *    * under the contract" cannot be withheld from him as rental for the use of the article, unless on the condition of the grace and sale required. If other amounts, paid not " on " the articles, though " under the contract " by reason of such contract including provision, separable in substance from the conditional sale, and which might have been the subject of a separate contract, such are to be considered as separate matters. In the present case there is the plaintiff's covenant, separable from the contract for conditional sale, to pay insurance, keep up repairs, and indemnify and save harmless from all claims arising out of the operation and control of the tug, while he had it in his possession. In *Rindone* v. *Hamlin's, Inc.,* 161 N. Y. Supp. 858, it was stated that the statutory purpose was not penal, but to protect the vendee from being mulcted by the vendor, and it was held that the latter might have an offset, or allowance, for the damages to the goods, while in the vendee's possession, over and above ordinary wear and tear. In *Siegel* v. *Rieser,* 97 Misc. Rep. 684, the value of labor and material furnished by the vendor to prepare premises to receive fixtures sold, was held not to be within the contemplation of the statute, or recoverable back by the vendee, though he had paid therefor. Such was not considered as " paid on " the articles. Let order be settled on notice, for perhaps the foregoing considerations (if accepted) may call for some amendment in the counterclaims.

Ordered accordingly.